Carol BAILEY

v.

AMERICAN STORES, INC./STAR MARKET.

No. 91–144–M.P.

Supreme Court of Rhode Island.

June 29, 1992.

Thomas M. Bruzzese, Sicard, Bruzzese & Connor, Warwick, for plaintiff.

Paul V. Mancini, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This matter comes before us as a result of a grant of a petition for a writ of certiorari by the employer, American Stores, Inc./Star Market (American), to review a final decree rendered by the appellate division of the Workers' Compensation Commission (commission)[1] in favor of the employee, Carol Bailey (Bailey). We grant American's petition.

1. Pursuant to P.L.1990, ch. 332, the Workers' Compensation Commission was renamed the Workers' Compensation Court. Consequently its commissioners are now referred to as judges.

On July 14, 1986, Bailey injured her neck while working at the Branch Avenue Star Market, stocking shelves as a grocery clerk. Bailey testified that she had just returned to work that day, as she had been previously injured in an unrelated incident. Bailey was classified as a part-time employee who was guaranteed by union contract employment consisting of twenty-five hours of work per week at an hourly wage of $7.37 per hour.

On March 26, 1987, a preliminary determination made at a hearing at the commission indicated that Bailey's average weekly wage was $294.80, a sum computed by multiplying $7.37 per hour by forty hours, the number of weekly hours scheduled for full-time employees to work at this particular establishment.

American appealed the commission's decision and sought a hearing de novo regarding Bailey's claim for benefits, contending that the average-weekly-wage sum should be adjusted to $156.11, in order to reflect the thirteen weeks Bailey actually worked prior to her first injury, pursuant to the computation formula set forth in G.L.1956 (1986 Reenactment) § 28-33-20, as amended by P.L.1986, ch. 507, § 7.

On June 23, 1988, the commissioner determined Bailey's average weekly wage to be the initially calculated sum of $294.80, computed in accordance with one alternative method allowed in § 28-33-20, which provides a method of computing earnings when an employee has worked "less than a net period of two (2) calendar weeks" prior to an injury.

On July 28, 1988, American filed an appeal to a three-member panel of the appellate division of the commission (panel). In affirming the commissioner's decision, the panel concluded that § 28-33-20 required a literal application since Bailey had not worked for a two-week period prior to her present injury because of her previous injury.

We note that at the time this matter was evolving, however, the former terminology was applicable and so we retain the earlier reference for the sake of clarity in the record.

American filed a petition for a writ of certiorari, contending that the panel erred in calculating Bailey's average weekly wage on the basis of a forty-hour week pursuant to § 28–33–20. American argues that the section in question was not intended to afford a part-time employee double his or her actual earnings by collecting workers' compensation. We agree.

■■■ The underlying purpose of the Workers' Compensation Act is to compensate most injured employees adequately on the basis of a calculation of their actual wages. Such benefits are not intended to provide full remuneration for all work-related injuries. *See Wright v. Rhode Island Superior Court,* 535 A.2d 318, 320 (R.I. 1988). Indeed this court has previously stated that "compensation benefits were never intended to provide general health and accident insurance or full compensation for injuries suffered in one's employment. Rather, they are designed to afford a limited amount of economic assistance to cushion the financial shock brought about by the absence of a weekly paycheck." *Peloquin v. ITT Hammel–Dahl,* 110 R.I. 330, 332, 292 A.2d 237, 239 (1972). In effectuating the Legislature's intent, we review and consider the statutory meaning most consistent with the statute's policies or obvious purposes. Moreover, the court will look to the statutory chapter in its entirety. *Carr v. Mulhearn,* 601 A.2d 946, 949 (R.I.1992).

■■■ When we place § 28–33–20 in its full context, we believe the General Assembly made the legislative overture to link the average weekly wage to an employee's earning capacity. For example, the last sentence of § 28–33–20 states that an employee who has previously been injured or received compensation shall not be precluded compensation. This particular portion continues that "in determining the compensation for the later injury or death, *his [or her] average weekly wages shall be such sum as will reasonably represent his [or her] weekly earning capacity at the time of the later injury.*" Section 28–33–20. Although the ensuing language indicates that the average weekly wage shall be calculated according to earlier provisions of § 28–33–20, this portion suggests that the Legislature attempted to tie the computation of the average weekly wage to an employee's actual earnings. This view is supported by this court's consistent belief that overtime pay is properly included in the computation of an average weekly wage. *See, e.g., McKenna v. Turnquist Lumber Co.,* 511 A.2d 298, 299–300 (R.I. 1986) (citing *Rau Fastener Co. v. Carr,* 74 R.I. 284, 287, 60 A.2d 499, 501 (1948)).

The Workers' Compensation Act, § 28–33–20, sets forth a formula for computing the disabled or injured employee's average weekly wage whereby his or her gross wage for a thirteen-week period preceding the injury is divided by the number of calendar weeks in that period in which the employee actually worked. 511 A.2d at 299–300; *LaBao v. Yankee Enterprises, Inc.,* 440 A.2d 739, 740 (R.I.1982). However, when the employee has failed to work "less than a net period of two (2) calendar weeks," the statute provides a choice of alternatives for computing the employee's average weekly salary. In such a situation the employee's wage is determined either by (1) taking the average weekly wage prevailing in the same or equivalent employment or (2) taking the employee's hourly wage, which the employer has agreed to pay that worker, multiplied by the number of weekly hours scheduled for full-time employees at that place of employment. *Id.*

The bone of contention in the instant matter is that the second method of computation, when applied to Bailey, results in a wage calculation based upon a full-time schedule even though Bailey is admittedly employed on a part-time basis. Although the statute specifically contemplates the alternative method for full-time employees, it does not directly address the dilemma currently posed by their part-time coworkers. Nevertheless the panel chose to apply the alternative method to Bailey's situation, relying upon a literal reading of the provision.

In doing so, the panel followed two cases that supported its position. In *LaBao v. Yankee Enterprises, Inc.,* 440 A.2d 739

(R.I.1982), a full-time insulation installer who had been injured previously at work and received workers' compensation benefits returned to work and in less than two weeks was reinjured. During the two-week period he was present at his place of employment, LaBao worked a total of seven and a half days. The court determined that LaBao was entitled to the alternative calculation under § 28–33–20 because he failed to work a net period of two weeks as statutorily mandated. In the second case, *Gamba v. Testa's Auto Body Works, Inc.*, 103 R.I. 366, 238 A.2d 618 (1968), a part-time employee's average weekly wage was calculated on the basis of a forty-hour week under the statute, which calculated the average weekly wage as "reckoning wages as earned while working full-time. 'Full-time' shall mean not less than forty (40) times the hourly rate of wages." *Id.* at 368, 238 A.2d at 619 (quoting former § 28–33–20).

While a reading of *LaBao* and *Gamba* provides very liberal grounds for interpreting the instant controversy, we choose to place our reliance elsewhere. The former is easily distinguished because LaBao was a full-time, and not a part-time, employee. Clearly it would have been inequitable to calculate an average of his earnings during the two weeks he returned to work as his average weekly wage sum. Such a result would defeat the purpose of supplying adequate compensation to an injured worker. The notable distinction between *Gamba* and the present situation is that two different versions of the same statute are involved. The *Gamba* version of § 28–33–20 unequivocally provided for a forty-hour basis for the calculation of an average weekly wage. In contrast, the current version of § 28–33–20 provides a formula that includes a choice of alternatives calculated upon an employee's actual wages averaged over a thirteen-week period. Applying a method of calculation that was relevant nearly a quarter of a century ago to the instant matter would produce an absurd result. Since Bailey had been employed for the preceding thirteen weeks, applying the current formula would compensate Bailey, a part-time worker, at a rate higher than her actual earnings.

Although it is true that the Workers' Compensation Act is to be liberally construed to effect its benevolent purposes, *see Fontaine v. Caldarone*, 122 R.I. 768, 412 A.2d 243 (1980), it is equally true that § 28–33–20 was never intended so that an employee would double his or her actual earnings. This court has repeatedly stated that it shall not construe a statute so as to produce an absurd or unreasonable result. *Rhode Island State Labor Relations Board v. Valley Falls Fire District*, 505 A.2d 1170 (R.I.1986). A very literal reading of § 28–33–20 in this instance allows a part-time employee who has just returned to her place of employment after an absence to be compensated at a higher rate by workers' compensation benefits than she would be by actually working a full-time schedule. This court is of the belief that the workers' compensation system is not designed to operate as a double-coupon redemption program such as that offered by neighborhood supermarkets. We believe a more effective interpretation of the legislative intent behind § 28–33–20 to compensate an injured employee adequately and fairly, in this instance, would be to calculate Bailey's average wage on the basis of her actual wages, as evidenced by the record.

Accordingly the petition for certiorari is granted, the decision of the appellate commission is quashed, and the case is remanded to the Workers' Compensation Court for further proceedings.