DECISION
This is an appeal from the decision of the Division of Public Utilities and Carriers, (herein "DPUC" or "Division") establishing a storage rate for non-consensual tows. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
Plaintiff, Rhode Island Public Towing Association Inc., is a Rhode Island corporation which represents certified towing companies. Remaining plaintiffs are individual towing companies with principal places of business in the State of Rhode Island. Defendant, DPUC, is an agency vested with authority as set forth in Title 39 of the Rhode Island General Laws. Defendant, William A. Maloney, is the Associate Administrator for motor carriers. Defendant, Thomas Ahern, is the Administrator of the Division of Public Utilities.
Up to January 1, 1995, defendants regulated rates for the storage of motor vehicles charged by plaintiffs. After January 1, 1995, it was believed that the Federal Aviation Administration Authorization Act of 1994 (herein "FAAA") had preempted state authority to regulate the towing industry. Accordingly DPUC discontinued its regulation of charges for the storage of motor vehicles.
On January 1, 1996, Congress passed the Interstate Commerce Commission Termination Act of 1995 and amended the FAAA. This amendment narrowed the preemptive range of the FAAA, opening the door for the states to regulate the towing industry.[1]
Thereafter, defendants sought to regulate rates and charges for the transportation of motor vehicles ("towing") and the rates for storage of such vehicles. On April 8, 1996, the Division held a public hearing. This hearing, to which plaintiffs objected and at which they questioned the Division's authority to regulate storage fees, was designed to provide interested parties with an opportunity to present evidence regarding the establishment of an interim rate structure for towing and storage services. On September 30, 1996, following months of dispute, the matter was remanded back to the hearing officer for "the purpose of establishing a reasonable interim holding rate" to be charged by certified Rhode Island towing companies. (See Interim Administrator's Findings and Decision Dated September 30, 1996 at 2.)
A hearing was held on May 23, 1997. The issues before the DPUC were (1) the setting of storage rates for non-consensual tows and (2) whether the Division had jurisdiction over setting these rates. By decision dated July 21, 1997, the hearing officer concluded "that the towing industry subject to Title 39-12 immediately implement a storage charge for non-consensual tows of seventeen dollars ($17.00) per day with charges for the first and last day set at one dollar ($1.00) an hour." (See Order 15347 at 11.)
Now before this Court is plaintiffs' request for relief pursuant to G.L. 1956 § 42-35-15. In addition to claiming that the hearing officer's decision, which established a rate for non-consensual tows of seventeen dollars ($17.00) per day with charges for the first and last day set at $1.00 per hour, was erroneous and in excess of statutory authority and law, plaintiffs contend that the hearing officer was biased, applied the wrong burden of proof, and incorrectly qualified experts. Although this matter has been consolidated with a similarly entitled case identified in the records of the Providence County Superior Court Clerk's Office as C.A. 97-1779,[2] the Court will here deal only with the issues raised in C.A. 97-3730.
 Standard of Review
The review of a decision of the Division by this Court is controlled by R.I.G.L § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (RI. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.,
No. 96-112-M.P., Slip Op. at 7 (R.I., filed June 9, 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. RhodeIsland Public Telecommunications Authority, et al. v. RhodeIsland Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 Standard for Determining Rates
Section 39-12-1 of the Rhode Island General Laws outlines this state's declared policy with respect to motor carriers. That policy includes, "promot[ing] adequate, economical, and efficient service by motor carriers and reasonable charges therefor without unjust discriminations, undue preferences, or advantages or unfair or destructive competitive practices." G.L. 1956 §39-12-1(1). (Emphasis added.) Section 39-12-4 outlines the "General powers and duties of the administrator" of public utilities. Those duties include the power "to administer, execute, and enforce all provisions of chapter 12.1 of this title and to make all necessary orders in connection therewith and to prescribe rules, regulations and procedures of administration." G.L. 1956 § 39-12-4(a)(5).[3]
Section 39-12-14 of the Rhode Island General Laws entitled "Factors governing determination of just and reasonable rates — Burden of proof —" provides guidelines for the administrator when establishing rates:
 "In the exercise of power to prescribe just and reasonable rates and charges for the transportation of property by common carriers by motor vehicle, and classifications, regulations, and practices relating thereto,
and to disallow rates filed by any carriers, the administrator shall give due consideration, among other factors, to the inherent advantages of transportation by the carriers; to the effect of rates upon the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and efficient transportation service of the carriers at the lowest cost consistent with the furnishing of the service; and to the need of revenues sufficient to enable the carriers under honest, economical, and efficient management to provide such service. In any proceeding, to determine the justness and reasonableness of any rates or charges of any common carrier, there shall not be taken into consideration or allowed, as evidence or element of value of the property of the carrier, either good will, earning power, or the certificate under which the carrier is operating." (Emphasis added.)
In C.A. 97-1779, this Court applied a liberal reading of § 39-12-11 and § 39-12-13. A liberal reading of §39-12-14 requires that the rate establishment standards, outlined in § 39-12-14, be applied to this case. Similar to the language in § 39-12-11 and § 39-12-13, the phrase "practices relating thereto," contained in § 39-12-14, implies non-consensual storage rates.[4] In reaching this conclusion, this Court is mindful of basic principles of statutory construction. That is, "ascertain[ing] and giv[ing] effect to the intent of the Legislature." Sorenson v. ColibriCorp., 650 A.2d 125, 128 (R.I. 1994). (Citations omitted.) When looking for legislative intent, a court must "consider the entire statute as a whole." Id. (citing Bailey v. American Stores,Inc./Star Market, 610 A.2d 117, 119 (R.I. 1992); Stone v. Goulet,522 A.2d 216, 218 (R.I. 1987)). "In effectuating the Legislature's intent, [the court] review[s] and consider[s] the statutory meaning most consistent with the statutes policies or obvious purposes." Sorenson, 650 A.2d at 129 (citing Bailey
610 A.2d at 119). A stated purpose behind the policy of chapter 39-12 is to "promote . . . reasonable charges therefor. . . ." Those charges include non-consensual tows.
 Review of the Record
In exercising his power to establish a rate for non-consensual tows, the administrator is statutorily required to give consideration to ". . . the inherent advantages of transportation by the carriers; to the effect of rates upon the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and efficient transportation service of the carriers at the lowest cost consistent with the furnishing of the service; and to the need of revenues sufficient to enable the carriers under honest, economical, and efficient management to provide such service." G.L. 1956 § 39-12-14.
Mr. Maloney, associate administrator for motor carriers, testified how he arrived at a charge of seventeen dollars ($17). First, Mr. Maloney looked at current market forces. Maloney instructed two Motor Carrier Representatives to review existing storage rates for certified towing companies (Tr. at 55.) The review was done by way of a telephone survey[5] and an actual audit of the towing companies' bills of lading. (Tr. at 55-59.) Next, Mr. Maloney looked at storage rates in effect before deregulation and attempted to consider an inflation adjustment.
 "A: I took the rates, I took the highest storage rates that were in effect in December of 1994 which is the last month of full jurisdiction of the Division in our estimation at the time and that was $16 a day. In fairness to the carriers to cover the costs for inflation and the CPI I increased that to $17 to reflect the two year period so in affect had the towing companies received a three percent increase per year on their storage rates that would have given them approximately $17, that $17 is identical to the average rate that was calculated by me based upon the existing market storage rates, that also was exactly $17 give or take ten cents." (Tr. at 72.)
Although Mr. Maloney maintained that the $17 rate is justified by field investigator's audit and his inflation adjustments (Tr. at 71-72), he also stated that "[he] did not give direct consideration [to the "inherent advantage of transportation by carriers"] by way of an independent audit. . . ." (Tr. at 89.)
A further review of the record indicates that Mr. Maloney, when asked, agreed that § 39-12-14 required a review of "the need of revenues sufficient to enable carriers under honest economical and efficient management to provide the service." (Tr. at 109.) In determining that amount of revenue, Maloney said that it was necessary to know the amount of expenses. (Tr. at 109.) However, when asked if he considered certain expenses in determining his $17 rate, Mr. Maloney buttressed his rate by stating that factors were considered when the $16 rate was approved prior to deregulation ". . . and all [he] did was compound upon that rate. . . ."
 "Q: Now I'm going to ask you a series of questions we went through the other day, and, again, to expedite matters all I'm going to ask you to answer is whether or not you gave any consideration to any of these items in determining the $17 rate that you recommended. Did you consider property taxes anywhere in the State of Rhode Island?
 . . .
 "A: I would like to say, yes, because those factors were considered initially when the $16 rate was approved prior to deregulation and all I did was compound upon that rate." (Tr. at 111.)
Further, Mr. Maloney neither knew what expenses were considered when the rate was previously set:
 "Q: Now, going to — is that assumption you made on the $16 you just testified that the tax rate was taken into consideration when that was set; is that correct?
 "A: Again, expenses where taken into consideration, I don't know what the exact expenses were.
 "Q: So that you don't know exactly what expenses were taken into or were ignored when the $16 was considered; correct?
 "A: I don't recall. (Tr. at 114-15),"
nor did he ". . . recall if that rate was the result of numerous hearings that were held way back in `93 and `94. . . ."
 "A: No, what I meant to say is I don't recall if that rate was the result of numerous hearings that were held way back in `93 and `94 and at that point in time sufficient evidence was on the record because those rates were approved." (Tr. at 112.)
Finally, in arriving at a rate of $1.00 per hour for charges for the first and last day of storage, Mr. Maloney testified that he was merely recommending the rate that ". . . was in effect before, it's nothing new." (Tr. at 80.) The record indicates that Maloney did not give due consideration to the factors as required in § 39-12-14.
After a review of the entire record, this Court finds that the agency's decision is based on findings which are not supported by reliable, probative and substantial evidence of record. Accordingly this case is remanded to the Division for findings of fact which are required for its decision as mandated by G.L. 1956 § 39-12-14. As this Court is remanding this case, it need not address appellants' additional arguments at this time. The Division shall issue notice for a new hearing.
Counsel shall submit the appropriate judgment for entry.
[1] By Report and Recommendation dated February 28, 1997, United States Magistrate Judge Lovegreen held that49 U.S.C. § 14501(c)(1) "does not preempt Rhode Island's authority to regulate storage rates charged to towed vehicles for post-transportation storage." Rhode Island Public TowingAssociation, Inc., et al. v. State of Rhode Island Division ofPublic Utilities and Carriers. et al., No. CIV. A. 96-454ML, 1997 WL 135571, at *6 (D.R.I. Feb. 28, 1997).
[2] It should be noted that in C.A. 97-1779, judgment was previously rendered following a bench decision. In 97-1779, this Court denied plaintiffs' request for injunctive relief and held that the defendants had the authority to hold hearings and promulgate rates for non-consensual tows. In so holding, this Court rejected plaintiffs' argument that storage "is not covered by the term[s] `. . . all services in connection therewith . . .' as found in § 39-12-11 or `. . . any service connected therewith in accordance with the legal standards provided in this chapter' as found in § 39-12-13." In C.A. 97-1779, this Court recognized that § 39-1-38 requires a "liberal construction."See G.L. § 39-1-38 which provides:
"The provisions of this title shall be interpreted and construed liberally in aid of its declared purpose. The commission and the division shall have, in addition to powers specified in this chapter, all additional, implied, and incidental power which may be proper or necessary to effectuate their purposes."
[3] Chapter 12.1 of Title 39 is entitled "The Towing Storage Act."
[4] See § 39-12-11, which contains the language, ". . . all services connected therewith . . ." and § 39-12-13, which contains the language, ". . . any service connected therewith in accordance with the legal standards provided in this chapter."
[5] Katherine A. Smith testified that she telephoned various towing companies and obtained rates for storage by "telling them that my car was disabled and I needed it to be towed and probably stored; and if it were to be stored, what they would charge." (Tr. at 234) See also Exhibit 16 which lists the rates for 25 companies called by Ms. Smith.