[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is an appeal of the May 19, 1999 decision of the Retirement Board of the Employees' Retirement System of Rhode Island (Retirement Board), which denied the Appellant, Kurt Strakaluse (Strakaluse) an accidental disability pension. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
On November 26, 1990, Strakaluse became a police officer for the City of Woonsocket, and a member of the State Fireman and Policeman Retirement System under the management, direction, and administration of the Employees' Retirement System (ERSRI) of Rhode Island for the City of Woonsocket. On September 4, 1997, Strakaluse was placed on "injured on duty" (IOD) status by the City of Woonsocket. On December 16, 1997, consistent with G.L. 1956 § 45-21.2-9(a), the Woonsocket Police Department submitted, on behalf of Strakaluse, an application for an accidental disability pension to the ERSRI. At the time of the application, Strakaluse was a 28-year old police officer with seven years and three months of service credits in the Municipal Employees' Retirement System (MERS). On the form for Strakaluse's accidental disability retirement application, "[s]tress/[d]epression" is provided as the answer to the question "State Medical Reason for Disability Application." In connection with this application, Strakaluse submitted an injury report dated September 3, 1997, citing "job related mental stress" as the cause of his injury.
The Retirement Board engaged three physicians — Dr. Stephen DiZio, Dr. R. Thomas Keller, and Dr. Louis Sorrentino — to examine Strakaluse, and all found he suffered from depression caused by a series of job related stressors dating back several years. All three doctors submitted timely medical reports to the Retirement Board.[1] Dr. DiZio, after examining Strakaluse, concluded "it does not appear that [Strakaluse's] condition results from one specific accident or incident but rather stems from a long series of stressors." (ERSRI Record Exhibit 7). Dr. Keller examined Strakaluse and indicated that Strakaluse's disability is "related to on-the-job stresses." (ERSRI Record Exhibit 8). Dr. Sorrentino examined Strakaluse and determined that "[t]his illness was definitely related to work and job related stress." (ERSRI Record Exhibit 9).
At its October 22, 1998 meeting, the Disability Subcommittee of the Retirement Board, after reviewing the application and supporting documentation supplied by Strakaluse and the medical reports of the independent physicians retained by the Retirement System, voted to deny Strakaluse's application for an accidental disability pension. The Subcommittee's denial was predicated on the failure of the application and supporting documentation to identify an identifiable incident which caused his injury as required by G.L. 1956 § 45-21.2-9.
Strakaluse appealed the Subcomittee's administrative denial of his application. On February 8, 1998, he appeared with counsel before the Disability Subcommittee, requesting a reconsideration of its denial. After taking testimony and reviewing the previously submitted file, the Subcomittee once again denied Strakaluse's application for an accidental disability pension.
On November 13, 1998, Strakaluse appealed the Disability Subcommittee's denial to the Retirement Board. On May 19, 1999, Strakaluse appeared before the Retirement Board pro se to appeal the Subcommittee's denial. After taking testimony, the Retirement Board affirmed the Subcommittee's denial of Strakaluse's application for an accidental disability pension. On June 17, 1999, Strakaluse filed a Complaint in the Nature of Petition for Review of Agency Decision, asserting jurisdiction pursuant to G.L. 1956 § 42-35-15.
 STANDARD OF REVIEW
This Court's review of the Retirement Board's decision is controlled by G.L. 1956 § 42-35-15 of the Administrative Procedures Act. Subsection (g) provides as follows:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"When reviewing an agency decision pursuant to [G.L. 1956] §42-35-15, the Superior Court sits as an appellate court with a limited scope of review." Mine Safety Appliances v. Berry,620 A.2d 1255, 1259 (R.I. 1993). This review "is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Barrington School Committee v. Rhode Island StateLabor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992) (citingBlue Cross Blue Shield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987); Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (1977)). If such evidence exists, this Court must uphold the agency's decision. Johnston Ambulatory SurgicalAssociates, Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (citingBarrington School, 608 A.2d at 1138). The trial judge "may not substitute his or her judgment for that of the administrative agency." Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997). The trial judge may reverse the findings of the agency "only in instances wherein the conclusions and the findings of fact are `totally devoid of competent evidentiary support in the record,' or from the reasonable inferences that might be drawn from such evidence." Bunch, 690 A.2d at 337 (quoting Milardov. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981)) (citing Guarino v. Department of Social Welfare,122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)).
"Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 16 (R.I. 1977) (citing Retail,Wholesale and Dep't Store Union, AFL-CIO v. NLRB, 466 F.2d 380
(D.C. Cir. 1972); Ridgely v. Secretary of Dep't of HEW,345 F. Supp. 983 (D. Md. 1972); Blue Earth County Welfare Dep't v.Cabellero, 302 Minn. 329, 225 N.W.2d 373 (1974)). A caveat to this general rule is: "[a]lthough [the Rhode Island Supreme] Court is the ultimate arbiter of law, [the Rhode Island Supreme Court] give[s] deference to an agency's interpretation of an ambiguous statute that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v. Rhode IslandDep't of Labor and Training Bd. of Review, 822 A.2d 164, 169 (R.I. 2003) (citing In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). See also Lyman v. Employee's Retirement System ofthe State of Rhode Island, 693 A.2d 1030, 1031 (R.I. 1997);Pawtucket Power Associates Limited Partnership v. City ofPawtucket, 622 A.2d 452, 456-57 (R.I. 1993).
 STATUTORY INTERPRETATION
As a police officer member of MERS, Strakaluse's pension benefits are governed by Title 45, Chapter 21.2 of Rhode Island General Laws. The issue presented is a question of law: whether G.L. 1956 § 45-21.2-9 requires an ERSRI member's application for an accidental disability pension to show that the member's on-the-job injury, which incapacitated the member for further service, resulted from an "identifiable incident."
Strakaluse claims G.L. 1956 § 45-21.2-9 does not require proof of an identifiable incident. Instead, Strakaluse contends the statute requires a showing of only the three elements listed in the statute. Strakaluse argues this Court must interpret the statute literally because the language of the statute is clear. To that end, Strakaluse urges this Court to follow the Massachusetts Supreme Judicial Court's interpretation of an analogous Massachusetts statute allowing an accidental disability pension claimant to prove that his or her disability arose from a sequence of incidents at work. Adams v. Contributory RetirementAppeal Board, 414 Mass. 360, 365, 609 N.E.2d 62, 65 (1993). Strakaluse contends such an interpretation is an obvious legal extension of the Rhode Island Workers' Compensation Act as the Rhode Island Supreme Court has already held psychic injuries are compensable under the Worker's Compensation Act. Consequently, Strakaluse maintains the Retirement Board's decision to deny Strakaluse an accidental disability pension should be reversed and remanded because it is based on an error of law regarding the purpose and language of G.L. 1956 § 45-21.2-9.
The Retirement Board contends Rhode Island law vests it with the administration of the ERSRI and expressly grants it wide discretion over all retirement matters, including pension eligibility determinations. As such, it argues this Court must accord considerable deference to its interpretation of the statute. The Retirement Board maintains it has consistently interpreted the relevant statute to require that the claimed injury be the result of a single identifiable accident and not one developed over a period of time. It contends that the requirements of the statute serve the important purpose of ensuring that accidental disability pensions are awarded only to those members suffering from work-related accidents. The Retirement Board argues that it determines pension eligibility and maintains that the Workers' Compensation Act is inapplicable.
Accordingly, the Retirement Board claims Strakaluse does not meet the identifiable incident requirement. It maintains the medical reports of the three physicians retained by it all conclude that Strakaluse suffers from depression and stress which resulted over the course of his employment and not by an identifiable incident. It contends Strakaluse's application for an accidental disability pension was properly denied and that its decision was based upon substantial evidence of the record. The Retirement Board points out that Strakaluse may be eligible to receive an ordinary disability pension.
Rhode Island General Laws 1956 § 45-21.2-9(a) provides:
 "(a) Any member in active service, regardless of length of service, is entitled to an accidental disability retirement allowance. Application for the allowance is made by the member or on the member's behalf, stating that the member is physically or mentally incapacitated for further service as the result of an injury sustained while in the performance of duty and certifying to the time, place, and conditions of the duty performed by the member which resulted in the alleged disability and that the alleged disability was not the result of the willful negligence or misconduct on the part of the member, and was not the result of age or length of service, and that the member has not attained the age of sixty-five (65). The application shall be made within five (5) years of the alleged accident from the injury which has resulted in the member's present disability and shall be accompanied by an accident report and a physician's report certifying to the disability. If a medical examination made by three (3) physicians engaged by the retirement board, and other investigations as the board may make, confirms the statements made by the member, the board may grant the member an accidental disability retirement allowance." (Emphasis added.)
This language requires members seeking to qualify for an accidental disability pension to certify the following three elements regarding their disability: the time the disability occurred, the place where the disability occurred, and the conditions under which the disability occurred. The statute also requires that an accident report accompany an accidental disability pension application. The phrase, "identifiable incident," does not appear in the statutory language of G.L. 1956 § 45-21.2-9(g).
In construing G.L. 1956 § 45-21.2-9(a), this Court must "establish and effectuate the intent of the Legislature." WayneDistribution Co. v. Rhode Island Commission for Human Rights,673 A.2d 457, 460 (R.I. 1996) (quoting Rhode Island State LaborRelations Board v. Valley Falls Fire District, 505 A.2d 1170, 1171 (R.I. 1986)) (citing Howard Union of Teachers v. State,478 A.2d 563 (R.I. 1984)). This intent is determined "by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning." C JJewelry Co., Inc. v. Dep't of Employment and Training, Board ofReview, 702 A.2d 384, 385 (R.I. 1997) (citing Asadoorian v.Warwick School Committee, 691 A.2d 573, 578 (R.I. 1997)). Moreover, "[i]t is well settled that when the language of a statute is plain and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Providence Worcester R. Co. v.Pine, 729 A.2d 202, 208 (R.I. 1999) (quoting Accent StoreDesign, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). "When confronted with statutory provisions that are unclear and ambiguous, however, we examine statutes in their entirety in order to `glean the intent and purpose of the Legislature.'" Providence, 729 A.2d at 209 (quoting State v.Flores, 714 A.2d 581, 583 (R.I. 1998); In re Advisory to theGovernor (Judicial Nominating Commission), 668 A.2d 1246, 1248 (R.I. 1996)). "In so doing, [the Rhode Island Supreme Court] consider[s] the entire statute as a whole [sic]; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." Id. (quoting Sorenson v. Colibri Corp.,650 A.2d 125, 128 (R.I. 1994)).
The Rhode Island Supreme Court has stated that "it is also a well-recognized doctrine of administrative law that deference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency." Pawtucket Power Associates Ltd. Partnership v.City of Pawtucket, 622 A.2d 452, 456-457 (R.I. 1993) (citations omitted)). "[D]eference is accorded even when the agency's interpretation is not the only permissible interpretation that could be applied." Id. (citing Young v. Community NutritionInstitute, 476 U.S. 974, 981 (1986)). Moreover, "the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." Asadoorian v. WarwickSchool Committee, 691 A.2d 573, 577 (R.I. 1997) (citingGallison v. Bristol School Committee, 493 A.2d 164, 166 (R.I. 1985)).
Chapter 21.2 of Title 45 of the Rhode Island General Laws "provide[s] municipalities with an alternate retirement plan for police and fire fighters." G.L. 1956 § 45-21.2-1. This alternative plan is administered by the Retirement Board created by Chapter 8 of Title 36 of Rhode Island General Laws. See G.L. 1956 §§ 45-21.2-4, 45-21-2(16), 45-21-21(b), 45-21-32. Accordingly, as part of its administration of ERSRI, the Retirement Board also manages the accidental and ordinary disability retirement benefits available for police officers.
In enacting Chapter 8 of Title 36, the Legislature vested "[t]he general administration and the responsibility for the proper operation of the retirement system" of Rhode Island in the Retirement Board. G.L. 1956 § 36-8-3. The Legislature endowed the Retirement Board "with a broad grant of authority over the state retirement system. . . ." Perotti v. Solomon, 657 A.2d 1045, 1047-48 (R.I. 1995). "The retirement board . . . possesses the power to `establish rules and regulations' for the administration and transaction of the retirement system and may `perform other such functions as are required' for the administration of the retirement system." Id. at 1048 (quoting G.L. 1956 § 36-8-3). The Legislature specifically set out the Retirement Board's authority to grant accidental disability retirement benefits, stating: "[t]he [R]etirement [B]oard shall establish uniform eligibility requirements, standards, and criteria for accidental disability which shall apply to all members who make application for accidental disability benefits." G.L. 1956 § 36-10-14(d).
Consequently, this Court affords great deference to the Retirement Board's interpretation of G.L. 1956 § 45-21.2-9(a). The Retirement Board argues eligibility for an accidental disability pension requires proof of an "identifiable incident," which entails the establishment of the three elements listed under the statute. This Court finds this interpretation consistent with the aforementioned authority granted by the Legislature to the Retirement Board and consistent with the administrative requirements for granting an accidental disability retirement as set out in the statute. The statute requires an accident report to accompany an accidental disability retirement application submitted by a police officer. This requirement reveals the Legislature's intent that an accidental disability pension application necessitates a preceding accident.
In addition, this Court notes this interpretation is consistent with the Retirement Board's requirements for an accidental disability pension under Chapter 10, of Title 36. Rhode Island General Law 1956 § 36-10-14(a) also requires an "accident" for an accidental disability pension. Rhode Island General Law 1956 §36-10-14(a) reads as follows:
 "Medical examination of an active member for accidental disability and investigation of all statements and certificates by him or her in his or her behalf in connection therewith shall be made upon the application of the head of the department in which the member is employed or upon application of the member, or of a person acting in his or her behalf, stating the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident while in performance of duty, and certify the definite time, place, and conditions of the duty performed by the member resulting in the alleged disability, and that the alleged disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member should, therefore, be retired." (Emphasis added.)
Furthermore, G.L. 1956 § 36-10-14(c) provides that:
 "If a medical examination conducted by three (3) physicians engaged by the retirement board and such investigation as the retirement board may desire to make shall show that the member is physically or mentally incapacitated for the performance of service as a natural and proximate result of an accident,
while in the performance of duty, and that the disability is not the result of willful negligence or misconduct on the part of the member, and is not the result of age or length of service, and that the member has not attained the age of sixty-five (65), and that the member should be retired, the physicians who conducted the examination shall so certify to the retirement board stating the time, place, and conditions of service performed by the member resulting in the disability and the retirement board may grant the member an accidental disability benefit." (Emphasis added.)
This statutory language of Title 36 also requires proof of the same three elements for an accidental disability retirement as those stated in G.L. 1956 § 45-21.2-9(a) and connects these elements to the establishment of an accident. This Court has previously ruled that an accidental disability pension under Chapter 10 of Title 36 requires an injury resulting from a single incident. Craveiro v. The Employee's Retirement System, C.A. No. 95-1816, at p. 10 (Williams, J.), cert. denied706 A.2d 1353 (1998).
Ostensibly, the Retirement Board applies the same requirement under both titles for granting an accidental disability retirement application: the injury must arise from a single event and the certification of the time, place, and conditions of that event. This similarity conveys an effort by the Retirement Board to apply a uniform, literal meaning to accidental disability retirement benefits. Consistent with the uniform administration of ERSRI and its legislative authority, the Retirement Board utilizes the identifiable incident requirement to distinguish between ordinary and accidental disability pensions. Other jurisdictions apply similar requirements for granting accidental disability pensions. See, e.g., Sheehan v. Marr,207 F.3d 35, 37-38 (1st Cir. 2000) (reviewing the involuntary accidental disability retirement application for a Massachusetts police lieutenant, the court cited Mass. Gen. Laws ch. 32, § 7(1), which requires an applicant for an accidental disability retirement to establish the job-related injury occurred at "some definite place and some definite time"); City of Cedar Rapids v. Board ofTrustees of the Municipal Fire and Police Retirement System ofIowa, 572 N.W.2d 919, 922 (Iowa 1998) (reviewing the Municipal Fire and Police Retirement System of Iowa's grant of an accidental disability retirement to a police officer, the court applied Iowa Code section 411.6(5)(a), which also requires an applicant for an accidental disability retirement to establish the job-related injury occurred at "some definite time and place").
Therefore, this Court upholds the Retirement Board's interpretation of G.L. 1956 § 45-21.2-9(a) because it effectuates the Legislature's intent to endow the Retirement Board with authority over the ERSRI. This Court considers neither the Massachusetts Supreme Judicial Court's interpretation of Massachusetts law nor the Rhode Island Workers' Compensation Act authoritative on interpreting a Rhode Island retirement statute. Accordingly, in its review of the Retirement Board's decision, this Court finds the Retirement Board's interpretation is not clearly erroneous or unauthorized.
 SUBSTANTIAL EVIDENCE
After reviewing the accidental disability pension application at issue, along with the supporting documentation supplied by Strakaluse and the Retirement Board, the medical reports of the independent physicians retained by the Retirement System, and the record of the administrative proceedings, this Court finds substantial evidence exists in the record to support the Retirement Board's finding that Strakaluse suffers from depression and stress which developed over the course of his employment and not from an identifiable incident. All three of the independent physicians' medical reports support this finding. Additionally, the pension application and injury report cite only to jobrelated stress. The record provides no indication of an identifiable incident. This Court finds the Retirement Board's decision to deny the accidental disability benefit is not clearly erroneous in view of the substantial evidence on the whole record.
 CONCLUSION
After a review of the entire record, this Court finds the decision by the Retirement Board was not based on an error of law and was not clearly erroneous in view of the substantial evidence in the record. Additionally, this Court finds nothing in the Retirement Board's decision which is in violation of constitutional or statutory provisions, which is in excess of the Retirement Board's statutory authority, which was made upon unlawful procedure, or which was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted abuse of discretion. The substantial rights of the appellant have not been prejudiced. Accordingly, Strakaluse's appeal is denied, and the decision of the Retirement Board is hereby affirmed.
Counsel shall prepare the appropriate judgment for entry.
[1] On the cover sheet of each doctor's medical report, entitled "ERSRI Independent Medical Examination," each doctor marked a box labeled "Yes" as the answer to the following question under the heading "Doctor's Opinion": "If the applicant is claiming accidental disability, is the disability such as might be the natural and proximate result of the accident undergone in the performance of the applicant's duties?" (RRSRI Record Exhibits 7, 8, and 9). Despite this response, none of the medical reports found Strakaluse's disability was caused by an accident.