## Aldo AIUDI

v.

**Maurice O. PEPIN, Treasurer, City of Woonsocket.**

### No. 79–321–Appeal.

Supreme Court of Rhode Island.

July 14, 1980.

Edward E. Dillon, Jr., Cumberland, for plaintiff.

Aram P. Jarret, Jr., Asst. City Sol., Woonsocket, for defendant.

### OPINION

KELLEHER, Justice.

The litigants in this declaratory-judgment action are before us on cross-appeals. The plaintiff, Aldo Aiudi (Aiudi), contends that a Superior Court justice erred in dismissing his claim that under G.L. 1956 (1970 Reenactment) § 45–19–1 (1979 Supp.), he was entitled to certain salary benefits from the city of Woonsocket (city). In its appeal, the city takes issue with that portion of the declaratory judgment which makes it liable for medical expenses incurred by Aiudi after May 15, 1975. This controversy can be placed in its proper perspective by settling certain undisputed facts.

Aiudi, a member of the city's police department since May of 1963, received service-connected injuries on June 1, 1969. On May 15, 1975, the police chief suspended him and filed "conduct-unbecoming-an-officer" charges against Aiudi. These charges specified that Aiudi, while working as a

security guard at a supermarket, had stolen groceries and other items on more than one occasion. The chief's actions were affirmed by the city's public safety director, its personnel appeal board, and by this court. *See Aiudi v. Baillargeon*, R.I., 399 A.2d 1240 (1979).

Subsequent to his dismissal order, Aiudi presented the city with medical and doctor bills amounting to just over $1,226. The city refused, and still refuses, to pay these bills, taking the position that Aiudi's dismissal acts as a bar to his receipt of any benefits under the relevant statute. Aiudi claims that, notwithstanding his dismissal, he is entitled to both the medical and salary benefits provided by this statute.

The issue presented is what benefits, if any, under § 45–19–1, are available to a dismissed police officer when the disability giving rise to the claim occurred prior to his discharge from the police department?

We begin our consideration of this question by reviewing the following pertinent portions of § 45–19–1:

"Salary payment during line of duty illness or injury.—Whenever any police officer * * * of any city * * * shall be wholly or partially incapacitated by reason of injuries received * * * in the performance of his duties, the respective city * * * by which said police officer * * * is employed shall, during the period of such incapacity, pay such police officer * * * the salary or wage to which the said police officer * * would be entitled had he not been so incapacitated, and in addition thereto shall pay such medical [expenses] * * for such period as is necessary * * *. In addition, said cities and towns shall pay all similar expenses incurred *by a member* who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his disability retirement. As used in this section, the term 'police officer' shall mean and include any chief or other member of the police department of any city or town regularly employed at a fixed salary or wage." (Emphasis added.)

In his appeal, Aiudi reminds us that statutes governing pensions are to be liberally construed, and cites the case of *Board of Trustees of Policemen's Pension Fund v. Starasinich*, 128 Colo. 556, 560, 264 P.2d 1033, 1035 (1954), which holds:

"In the absence of any statutory provisions on the subject of the misconduct of one primarily entitled to receive a pension, the majority rule seems to be that such misconduct is not ground for denial of a pension."

Although certain classes of statutes must be construed liberally, the application of this policy must never serve to do violence to the express terms of the statute. *Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co.*, R.I., 388 A.2d 352 (1978); *Reardon v. Hall*, 104 R.I. 591, 247 A.2d 900 (1968).

■ Aiudi's claim for possible salary subsequent to May 15, 1975, flounders upon the crystal-clear language of § 45–19–1, which obligates a municipality to pay to an incapacitated police officer "the salary or wage to which the said officer * * * would be entitled had he not been so incapacitated." This proviso is self-declaratory and needs no construction. *Cardi Corp. v. City of Warwick*, R.I., 409 A.2d 136 (1979). Salary benefits become payable only if, at the time of the demand, the officer would have been eligible to receive a salary. On May 15, 1975, Aiudi was not entitled to the salary benefits called for by § 45–19–1 because he was no longer a member of the Woonsocket Police Department.

■ Both the trial justice and the city, in their consideration of Aiudi's claim for continued medical benefits, rely upon certain comments found in *Santanelli v. City of Providence*, 105 R.I. 208, 250 A.2d 849 (1969). Santanelli was a retired firefighter who sought a declaratory judgment regarding where he should look for reimbursement of medical expenses incurred after his retirement but in connection with a job-related injury. The two potential reimbursement sources were § 45–19–1 and P.L. 1923, ch. 489, a special retirement act applicable

only to the city of Providence. We ruled that the retiree's reimbursement was to be governed solely by the provisions of the Providence Retirement Act. As we concluded our opinion in *Santanelli*, we observed:

> "If the benefits he [Santanelli] finds there [in the Providence Retirement Act] are less favorable than those which other municipalities are required under the general legislation to provide for others similarly situated, his recourse lies within the legislature and not with the courts." *Id.* at 213, 250 A.2d at 852.

Apparently, the trial justice was intrigued with this language, for he ruled that implicit in our reliance on the terms of the special act was an assurance that all full-time police officers who work for municipalities having no special retirement acts would be eligible for the medical benefits enumerated in § 45–19–1.

The city looks to that portion of § 45–19–1 which defines the beneficiaries of its provisions as individuals who are "regularly employed at a fixed salary or wage." It then claims that Aiudi cannot qualify for the medical benefits because he was not "regularly employed" subsequent to May 15, 1979, and supports this argument by contending that *Santanelli* indicates that an individual who severs himself from municipal employment, whether voluntarily or involuntarily, must look to some place other than § 45–19–1 for the continuation of medical benefits.

Both the trial justice and the city misread *Santanelli*. In *Santanelli*, the city of Providence took the position that since the 1923 legislation that led to the creation of the Providence retirement system preceded the original enactment of § 45–19–1 in 1944, the special, rather than the general, act must prevail. This principle was first alluded to by Providence and adopted by this court in *Landers v. Reynolds*, 92 R.I. 403, 169 A.2d 367 (1961). We affirmed this principle in *Santanelli* and reiterated it recently in *St. Germain v. City of Pawtucket*, R.I., 382 A.2d 180 (1978).[1] However, at no time has this court stated anything definitive relative to the issue presently before us.

In determining whether Aiudi is eligible to recover the medical expenses awarded him by the trial justice, we look to that portion of § 45–19–1 which obligates a municipality to pay the medical expenses of an injured officer [2] "for such period as is necessary." Section 45–19–1 is remedial legislation that should be liberally construed. There is no express proviso calling for forfeiture of one's right to medical benefits in the event the officer, for some reason, has left municipal employment. In the absence of any controlling Rhode Island authority on the issue now before us, we believe that liberality requires us to adhere to the view that even if termination of employment was involuntarily procured, there is no forfeiture of the benefits called for by statutes whose purposes are similar to those that led to the enactment of § 45–19–1. *Board of Trustees of Policemen's Pension Fund v. Starasinich*, 128 Colo. 556, 264 P.2d 1033 (1954), *Miller v. City of Wilmington*, 285 A.2d 443 (Del.Ch.1971), *aff'd* 293 A.2d 574 (Del.Supr.1972); *Firemen and Policemen's Pension Fund v. Cruz*, 458 S.W.2d 700 (Tex. Civ.App.1970); *State ex rel. Johnson v. Funkhouser*, 52 Wash.2d 370, 325 P.2d 297

---

1. The city of Woonsocket has a special retirement act for the police, P.L. 1935, ch. 2246, § 6, as amended. Under this act an officer injured in the performance of duty which results in total disability receives an annual pension which is equal to two thirds of the "last yearly salary paid to said officer * * *." However, the city, in executing its collective-bargaining agreement with the police officers' union, agreed that retirement benefits for work-related injuries would be given pursuant to the terms of the general statute.

2. Through the years, the class of beneficiaries listed in G.L. 1956 (1970 Reenactment) § 45–19–1 (1979 Supp.) has been expanded so that today the pay and medical-expense benefits to which we have alluded are available to all municipal police officers and firemen, the State Police, and members of the Department of Transportation's Emergency Crash Rescue Section "who are regularly employed at a fixed salary or wage." In addition, municipalities are now required to pay any medical expense incurred by a pensioner in treating an injury or illness that "dictated" the disability retirement.

(1958); *see also* 3 McQuillin, *Municipal Corporations* § 12.152 at 653 (3d ed. 1973); *Annot.*, 76 A.L.R.2d 566 (1960).

We view Aiudi in the same light as an injured employee who, after receiving workers' compensation, is discharged from work for conduct akin to Aiudi's and, after discharge, incurs medical expenses from a work-related injury. No one would question the employer's obligation to pay that expense, and similarly, we perceive no reason to deny Aiudi's medical-expense claim. His right, insofar as it concerns his medical expenses, accrued on the day he was injured while performing his duties.

The appeals of both Aiudi and the city are denied and dismissed, and the judgment appealed from is affirmed.