**Irene DaPONTE**

v.

**OCEAN STATE JOB LOT, INC. et al.**

**No. 2010–29–Appeal.**

Supreme Court of Rhode Island.

May 12, 2011.

Noelle K. Clapham, Wakefield, for Plaintiff.

Joseph D. Whelan, Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

On October 25, 2001, the president of Ocean State Job Lot, Marc Perlman, entered one of the company's stores, and, after expressing his displeasure over the placement of a price sticker, forcefully attached the sticker to the shoulder of the plaintiff employee, Irene DaPonte. The plaintiff filed suit in the Superior Court under the provisions of G.L.1956 § 9–1–28.1(a)(1), alleging a violation of her right to privacy through an unreasonable intrusion on her physical solitude or seclusion. Even though she considered Perlman's actions to be highly inappropriate, the trial justice nonetheless dismissed the plaintiff's lawsuit for intrusion of privacy because she found it to be not actionable under the law. The plaintiff timely appealed the judgment of the Superior Court to this Court. The matter came before us for oral argument on April 5, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and considering the memoranda submitted, we are satisfied that cause has not been shown, and we proceed to decide this appeal without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

The plaintiff, Irene DaPonte, is a former employee of defendant, Ocean State Job Lot, Inc. (Ocean State), which was co-founded by defendant, Marc Perlman, the corporation's current president and CEO. There are several Ocean State stores located throughout Rhode Island, and the chain is known for selling brand-name merchandise at discount prices. On October 25, 2001, plaintiff was working at Ocean State's North Kingstown store, shortly before it opened to the public, when Perlman arrived. At Ocean State, it is the responsibility of the senior on-duty person to greet and "walk the store" with Perlman whenever he arrives at a particular store. "Walk the store" colloquially refers to a process that involves physically walking through the store with a member of high-level management for the purpose of receiving direct critique and evaluation of what is being done properly and what needs to be improved. The plaintiff, an assistant manager with more than six years of experience working for the company, was the senior person on duty in North Kingstown that morning.

The plaintiff proceeded from the back of the store to the front to greet the president, and met him in an area between a shoe-table display and a rug display that was located near the front of the store. Perlman was upset with the arrangement

of the shoe display and also with the misplacement of a price tag on a rug. Although the exact words exchanged and the tone of the encounter were the subject of dispute during a jury-waived trial, the parties agreed that Perlman removed a misplaced price tag from a rug and put it on plaintiff's shoulder without warning. On the one hand, plaintiff contended that defendant "slammed" the price tag on her shoulder with enough force to rock her back on her heels. Conversely, defendant contended he could only affix such a small price tag with a thumb and forefinger and that placement of the price tag was more properly characterized as an inconsequential touching. In either instance, it is undisputed that defendant neither asked permission nor received consent to touch Ms. DaPonte as a way to demonstrate his concern that improperly placed price tags easily could be switched.[1] Moreover, the trial court found "that Perlman did in fact slam or forcefully place the pricing sticker on the Plaintiff's shoulder, which constitute[d] both an offensive and un-consented to touching."

As a result of that incident, plaintiff filed a four-count complaint in the Washington County Superior Court against defendants on December 6, 2002. Two of those four counts—a count for negligent hiring and supervision (dismissed on defendant's motion for summary judgment) and a count for intentional infliction of emotional distress (dismissed by joint stipulation of the parties)—did not proceed to trial and are not contested in this appeal. The remaining two counts alleging (1) a violation of Ms. DaPonte's right to privacy under § 9–1–28.1(a)(1), providing an individual with "[t]he right to be secure from unreasonable intrusion upon one's physical solitude

or seclusion," and (2) an associated claim, extending liability from Mr. Perlman to Ocean State based upon the legal theory of *respondeat superior*, were tried by a Superior Court justice, sitting without a jury, on March 31, 2008. On March 6, 2009, final judgment was entered, dismissing both remaining counts of plaintiff's claim with prejudice. In so ruling, the trial court wrote:

> "[N]otwithstanding the glaring inappropriateness of the Defendant's actions, which amount to criminal assault and battery, the [c]ourt finds that Perlman's conduct is not actionable under § 9–1–28.1. This unfortunate incident is simply not an occurrence which falls under the language of § 9–1–28.1, nor is it an occurrence which the right to privacy statute was intended to address."

A timely notice of appeal was filed on March 13, 2009.

### Standard of Review

"It is well settled that the findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal absent a record showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Donnelly v. Cowsill*, 716 A.2d 742, 747 (R.I.1998). "However, questions of law and statutory interpretation are reviewed *de novo*." *Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1032 (R.I.2005) (citing *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001)).

"In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Webster*, 774 A.2d at 75. Toward this end, "this [C]ourt has the

---

1. Prevention of tag-switching—an illicit practice in which a price tag is removed from a lower-priced item and then placed on a higher-priced item before presentation at checkout—is a common concern shared by those in the retail industry.

responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning." *Nassa v. Hook–SupeRx, Inc.,* 790 A.2d 368, 370 (R.I.2002) (quoting *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1049 (R.I.1994)).

■■■ We are mindful that it is our task, whenever possible, to construe laws "such that they will harmonize with each other and be consistent with their general objective scope." *In re Doe,* 717 A.2d 1129, 1132 (R.I.1998) (quoting *Blanchette v. Stone,* 591 A.2d 785, 786 (R.I.1991)). Therefore, "[a] statute may not * * * be construed in a way that would result in 'absurdities or would defeat the underlying purpose of the enactment.'" *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d at 1050 (quoting *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I. 1987)).

### Analysis

■ Section 9–1–28.1(a)(1) provides:

"(a) *Right to privacy created.* It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually:

(1) The right to be secure from unreasonable intrusion upon one's physical solitude or seclusion;

(i) In order to recover for violation of this right, it must be established that:

(A) It was an invasion of something that is entitled to be private or would be expected to be private;

(B) The invasion was or is offensive or objectionable to a reasonable man; although,

(ii) The person who discloses the information need not benefit from the disclosure."

Since it was enacted, we have had few occasions to interpret § 9–1–28.1(a)(1).[2] Most recently and most relevant to the matter before us, in *Swerdlick v. Koch,* 721 A.2d 849, 856, 864 (R.I.1998), we affirmed the judgment of the Superior Court granting the defendant's motion for judgment as a matter of law after the plaintiffs rested their case following four days of testimony presented before a jury. In that case, the plaintiffs contended that over a period of several months, the defendant neighbor had photographed and taken copious notes documenting activities outside the plaintiffs' home. *Id.* at 853–56. Those activities were undertaken to support allegations that the plaintiffs were operating a business in violation of local zoning ordinances. *Id.* Under these circumstances, because the defendant's surveillance was not invading shielded activities, we held that "[a]ctivities occurring in plain view of the public are not entitled to the protection of the privacy statute merely because they occur on private property ·in the vicinity of the actor's home." *Id.* at 858. We concluded that "[the] defendant has not violated the statute, notwithstanding the fact that his conduct may have been, at times, offensive * * *." *Id.*

---

**2.** Additional rights to privacy are provided under G.L.1956 § 9–1–28.1(a)(2) to (4). These protected privacy interests include "[t]he right to be secure from an appropriation of one's name or likeness[,]" § 9–1–28.1(a)(2); "[t]he right to be secure from unreasonable publicity given to one's private life[,]" § 9–1–28.1(a)(3); and "[t]he right to be secure from publicity that reasonably places another in a false light before the public[,]" § 9–1–28.1(a)(4). There are no claims pertaining to these sections before us in this appeal.

In reaching its holding, this Court said that § 9–1–28.1(a)(1) "only protects against an invasion of 'one's physical solitude or seclusion,' neither of which is present when one ventures outside his or her house into public view." *Swerdlick*, 721 A.2d at 857. In addition, we said:

"To establish a claim under this section of the privacy statute, some invasion of a person's physical solitude or seclusion must have occurred, and this Court will not rewrite the statute contrary to its plain meaning to cover alleged psychological invasions caused by mere observations of public activities that do not also involve the requisite physical invasion mandated by the statute." *Id.* at 858.

The plaintiff contends that *Swerdlick* is not to be interpreted as imposing a bright-line rule that forecloses a right of action under § 9–1–28.1(a)(1) in any and all instances when a person leaves the privacy of a home and enters a public space.[3]

Section 9–1–28.1(a)(1)(i) says that "[i]n order to recover for violation of this right, it must be established that: (A) It was an invasion of something that is entitled to be private or would be expected to be private * * *." *Swerdlick* stands unequivocally for the proposition that a person's private residence is of the species of "something that is entitled to be private or would be expected to be private" *Swerdlick*, 721 A.2d at 857 (quoting § 9–1–28.1(a)(1)(i)(A)); however, *Swerdlick* also stands for the proposition that once the person leaves the seclusion of the home and enters the public domain, the burden is upon the party alleging an unreasonable intrusion upon his or her physical solitude or seclusion to establish that "thrown about his [or her] person or affairs" is an affirmative seclusion sufficient to merit an objective expectation of privacy.[4] *Id.* at 857 n. 11 (quoting Restatement (Second) *Torts*, § 652B cmt. *c.* at 379 (1977)). It is clear to us that "[a] work area of a business, unlike, for example, a bathroom or a bedroom, is not a place of solitude or seclusion." *Ulrich v. K–Mart Corp.*, 858 F.Supp. 1087, 1095 (D.Kan.1994) (declining to merit the plaintiff's invasion-of-privacy allegation because the plaintiff could not establish the existence of an area of solitude or seclusion).

After careful review of the record, we cannot say that plaintiff established that on October 25, 2001—nor at any relevant time prior to the alleged incident occurring at the Ocean State Job Lot business in North Kingstown—she threw about her person a seclusion that would merit an

3. To this precise point, *Swerdlick v. Koch*, 721 A.2d 849, 857 n. 11 (R.I.1998) relied on the Restatement (Second) *Torts*, § 652B cmt. *c.* at 379–80 (1977) which "offers insightful commentary." In pertinent part, comment *c.* says, "[t]he defendant is subject to liability under the rule [for intrusion upon seclusion] only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement (Second) *Torts*, § 652B cmt. *c.* at 379.

4. Providing an example of a private seclusion thrown about a person in a public place, Restatement (Second) *Torts*, § 652B cmt. *c.* at 380, explains, "[e]ven in a public place, * * *

there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters." Explaining the theory, comment *c.* continues:

"A, a young woman, attends a 'Fun House,' a public place of amusement where various tricks are played upon visitors. While she is there a concealed jet of compressed air blows her skirts over her head, and reveals her underwear. B takes a photograph of her in that position. B has invaded A's privacy." *Id.* at cmt. *c.*, illus. 7. at 380.

expectation of privacy actionable under § 9–1–28.1(a)(1).

To support her position, plaintiff cites to *Liu v. Striuli,* 36 F.Supp.2d 452, 479 (D.R.I.1999), a case in which the United States District Court interpreted § 9–1–28.1(a)(1) to extend to an invasion of the body. There, the District Court said, "as a matter of basic human decency, it is difficult to imagine something more deserving of the right to privacy than one's own body." *Liu,* 36 F.Supp.2d at 479. But *Liu* is easily distinguished in its facts. Foremost, the subject matter in *Liu* related to the serial harassment and brutal rape of a young woman by her college professor, after he forced his way into the young woman's apartment. *Id.* at 458–60. The invasion on her solitude and seclusion was thus two-fold: (1) upon the privacy of her secure home, and (2) upon the sexual privacy of her body. *Id.* at 479. In contrast, here the contact was in a public place of business, it was nonsexual in nature, fleeting, and the only touching was of an outer garment.

Finally, we note that our well-established rules of statutory interpretation require us to harmonize the laws so as to achieve consistency "with their general objective scope." *In re Doe,* 717 A.2d at 1132 (quoting *Blanchette,* 591 A.2d at 786). In this regard, we share the trial justice's conclusion that even though there is a strong gloss of inappropriateness, and indeed offensiveness, attached to the defendant's action, to transform the defendant's public, boorish touching of the outer garment of the plaintiff's shoulder and other coarse behavior into a right-to-privacy action would transform every non-permitted touching into a parallel right-to-privacy action under § 9–1–28.1(a)(1). As correctly perceived by the trial justice in her written decision, such a holding "would render meaningless the statutory requirements of

'physical solitude and seclusion' and an intrusion of 'something that is entitled to be private or would be expected to be private.'" Furthermore, we hold that in arriving at that conclusion of law, the trial justice did not overlook or misconceive material evidence, and that she otherwise was not clearly wrong in her decision.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record is remanded to the Superior Court.