STATE

v.

Edward GORDON.

No. 2010–109–C.A.

Supreme Court of Rhode Island.

Nov. 9, 2011.

Aaron L. Weisman, Providence, for State.

Christopher S. Gontarz, Middleton, for defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

On October 4, 2007, Jill, a thirty-five-year-old daycare worker and single mother, reported to the Bristol police that she had been sexually assaulted by the defendant, Edward Gordon.[1] On October 5, Bristol police officers applied for and obtained a search warrant for the defendant's apartment.[2] The warrant was issued by Superior Court Magistrate William McAtee. On December 7, 2007, a grand jury indicted the defendant on two counts of first-degree sexual assault, one count of kidnapping, and one count of second-degree sexual assault. Before trial, the defendant filed a motion to suppress the evidence seized during the search. In his motion, the defendant argued that Magistrate McAtee lacked the authority to issue a search warrant. The trial justice denied the defendant's motion, and a jury trial commenced on May 19, 2009. At the conclusion of the trial, the jury convicted the defendant of second-degree sexual assault, acquitted him on both counts of first-degree sexual assault, and deadlocked on the kidnapping charge. The defendant filed a motion to dismiss the kidnapping charge, which the trial justice denied. He timely appealed to this Court.[3]

Before this Court, defendant argues that the Superior Court magistrate had no authority to issue a search warrant and that retrial on the charge of kidnapping would violate his rights with respect to the double-jeopardy provisions of the United States and Rhode Island Constitutions. On October 3, 2011, the parties appeared before the Court for oral argument pursuant to an order directing the parties to show cause why the issues raised by defendant's appeal should not be summarily decided without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the appeal should be decided at this time. For the reasons set forth in this opinion, we affirm the rulings of the Superior Court.

1. We refer to the victim in this case by a pseudonym to protect her privacy.

2. The search yielded a black leather belt, as well as a guitar foot pedal and attached cord. Also, police officers took a number of photographs of defendant's apartment during the search that matched Jill's description of what she had observed during the assault.

3. The trial justice stayed retrial on the kidnapping charge, pending the outcome of this appeal.

## I

## Motion to Suppress

■ On appeal, defendant contends that neither the statutorily enumerated duties of a Superior Court magistrate nor the Superior Court Rules of Criminal Procedure empower a magistrate judge to issue a search warrant.[4] This Court reviews matters of statutory interpretation and statutory construction *de novo*. *See School Committee of Cranston v. Bergin–Andrews*, 984 A.2d 629, 641 (R.I.2009) (citing *Liberty Mutual Insurance Co. v. Kaya*, 947 A.2d 869, 872 (R.I.2008)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Tanner v. Town Council of East Greenwich*, 880 A.2d 784, 796 (R.I.2005) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). However, if the statute is ambiguous, then the Court must construe the statute to "determine and effectuate the Legislature's intent and [ ] attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Id.* (quoting *Keystone Elevator Co. v. Johnson & Wales University*, 850 A.2d 912, 923 (R.I.2004)).

■ Both parties cite G.L.1956 §§ 8–2–39 and 8–2–39.1, as amended by P.L.2007, ch. 73, art. 3, § 6, which enumerate the powers of "general" and "special" magistrates, as the source of Magistrate McAtee's authority. However, after reviewing the record and relevant legislative enactments, we are of the opinion that neither party has cited the correct statute. We arrive at this conclusion because in October 2007, Magistrate McAtee presided as the "administrator/magistrate" of the Superior Court.[5] The differences between these three positions are not insignificant; the enumerated powers of a general or special magistrate differ considerably from those of the administrator/magistrate. *Compare* § 8–2–11.1 (describing the authority of administrator/magistrate) *with* § 8–2–39 (describing the authority of a general master) *and* § 8–2–39.1 (describing the authority of a special master).[6] The administrator/magistrate's judicial authority springs from § 8–2–11.1, as amended by P.L.2007, ch. 73, art. 3, § 5, as it existed on the date in question. The statute provides that the administrator/magistrate "shall have the power to hear and determine such matters as may be assigned to the administrator/magistrate by the presiding justice all to the same effect as if done by a justice of the [S]uperior [C]ourt." Section 8–2–11.1(b)(1). Additionally, the statute says:

---

4. This is defendant's sole argument with respect to the validity of the warrant. He does not challenge the sufficiency of the underlying affidavit, the basis for the magistrate's finding of probable cause when he issued the warrant, or the scope of the subsequent search.

5. We note that the presiding justice appointed McAtee to be the administrative clerk of the Superior Court on November 15, 1989. The presiding justice subsequently elevated him to the position of administrator/magistrate after the General Assembly enacted G.L.1956 § 8–2–11.1 in 1991 (P.L.1991, ch. 44, art. 73, § 1). It is from that statute, and not from either

§ 8–2–39 or § 8–2–39.1, that Magistrate McAtee derived his judicial authority.

6. The General Assembly amended the entire statutory scheme with respect to judicial magistrates in 2007. *See* P.L.2007, ch. 73, art. 3, § 4. The amendment purported to "determine the rights and duties of court magistrates" by establishing a common process for their selection and fixing a ten-year term tenure for all Superior Court magistrates. *Id.* Nonetheless, even after the statutory amendment, the enumerated powers of the administrator/magistrate remain distinct from those of general and special magistrates.

*"Without limiting the generality of the foregoing powers and authority,* the administrator/magistrate is authorized and empowered to hear and determine motions in civil and criminal proceedings, formal and special causes, to conduct arraignments, to grant or deny bail, to accept pleas of not guilty, guilty, or nolo contendere, and to impose sentence on a plea of guilty or nolo contendere, all to the same effect as if done by a justice of the [S]uperior [C]ourt." § 8–2–11.1(b)(2) (emphasis added).

In our opinion, the plain language of § 8–2–11.1 imbues the administrator/magistrate with the same authority as a justice of the Superior Court to issue a search warrant. Indeed, the statute provided that he was accorded "all the powers of a regular justice of the Superior Court" with respect to any matter assigned to him by the Presiding Justice. *See* § 8–2–11.1(b)(1).

On the day in question, Magistrate McAtee had been designated as the "duty justice" by the presiding justice of the Superior Court. Although the role of "duty justice" is not specifically defined by either rule or statute, the presiding justice periodically assigns a single justice or magistrate by administrative order to preside on particular days. The appointment of a duty justice falls well within the ambit of the presiding justice's statutory authority as the chief administrator of the Superior Court. *See* § 8–2–4 ("The presiding justice of the [S]uperior [C]ourt shall be the administrative judge. He or she shall be

the administrative head of the [S]uperior [C]ourt and have supervision and control of the calendars and of the assignment of justices."). Both the state and defendant agree that the presiding justice assigned Magistrate McAtee to be the duty justice on October 5, 2007.[7] In that capacity, and as a result of his statutory authority as an administrator/magistrate of the Superior Court, Magistrate McAtee had the power to hear and determine any matter that came before him "to the same effect as if done by a justice of the Superior Court." Section 8–2–11.1(b)(1). There is no dispute that Superior Court justices have the power to issue search warrants. *See* Super. R.Crim. P. 41(a). Accordingly, we conclude that Magistrate McAtee had the authority to issue the search warrant obtained by Bristol police officers on October 5, 2007.

## Double Jeopardy

■■■ The defendant next argues that retrial on the charge of kidnapping following the jury's deadlock on that count would violate the double jeopardy clauses of both the United States and Rhode Island Constitutions. Although it provides criminal defendants with a "complex of rights," *State v. Torres,* 524 A.2d 1120, 1123 (R.I. 1987), the essence of the Double Jeopardy Clause of the constitution prohibits "multiple prosecutions for the same offense." *State v. Grabowski,* 644 A.2d 1282, 1284 (R.I.1994) (quoting *Jeffers v. United States,* 432 U.S. 137, 150, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977)).[8] "A retrial after a

**7.** The state concedes that the presiding justice did not file a formal order documenting Magistrate McAtee's assignment on October 5, 2007. Nonetheless, the trial justice noted in the record that such appointments are often made "informally" and he made a factual finding that the presiding justice had assigned Magistrate McAtee to serve in that capacity on October 5. In our opinion, the fact that the

appointment was made informally does not affect its validity.

**8.** This Court has held that the double-jeopardy protections of the Rhode Island Constitution are generally coextensive with those of the United States Constitution. *See State v. Grabowski,* 644 A.2d 1282, 1286 (R.I.1994); *State v. Diaz,* 521 A.2d 129 (R.I.1987).

mistrial may present an issue of double jeopardy unless the mistrial is based on reasons of manifest necessity or unless the defendant consented or requested a mistrial." *Id.* at 1286 n. 2 (citing *Torres,* 524 A.2d at 1123). We have held that "[a] genuinely deadlocked jury provides a manifest necessity for a mistrial." *Grabowski,* 644 A.2d at 1286 n. 2. Furthermore, we adopt the reasoning of the United States Supreme Court, which has held that so long as the trial justice exercised "sound discretion" in concluding that the jury was genuinely deadlocked, then his decision will not be disturbed, and retrial of a criminal defendant does not violate the Double Jeopardy Clause. *See United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

█ Our review of the record leads us to the firm conclusion that the trial justice did not abuse his discretion when he determined that the jury was "genuinely deadlocked." During the first day of deliberations, the jury asked to be reinstructed with respect to the kidnapping charge. The trial justice provided those instructions. After a day and a half of deliberations, the jury sent another note to the trial justice, informing him that "one question remains unresolved." The trial justice specifically asked the foreperson if the jury was unable to agree on the kidnapping charge; the foreperson replied, "Yes." The trial justice then asked the jurors to return to their deliberations for the remainder of the day to "reexamine their positions" and to discuss whether there is "any possible way you can reach a unanimous verdict." In addition, the trial justice gave the jury a supplemental *Allen* charge.[9] Nonetheless, the jury returned some time later and reported that it remained unable to reach a verdict on that count, at which time the trial justice accepted the verdicts on the other counts. In our opinion, the trial justice did not abuse his discretion when he concluded that the jury was genuinely deadlocked after he had made a prudent examination of the jury's progress, provided supplemental instructions, and requested that the jurors return to their deliberations for a reasonable period.[10]

### Conclusion

The judgment of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court.

---

9. "An *Allen* charge is '[a] supplemental jury instruction given by the court to encourage a deadlocked jury, after prolonged deliberations, to reach a verdict.' " *State v. Vargas,* 21 A.3d 347, 351 n. 8 (R.I.2011) (quoting Black's Law Dictionary 87 (9th ed. (2009)). We note that defendant lodged no objection to either the *Allen* charge or the trial justice's subsequent declaration of a mistrial.

10. The defendant's suggestion that this Court rely on *Renico v. Lett,* ⸺ U.S. ⸺, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010), is misplaced. A majority of the United States Supreme Court resolved *Renico* by considering whether the Michigan Supreme Court unreasonably applied clearly established federal law, not whether the trial judge should have declared a mistrial or abused his discretion in doing so. *See id.* at 1863.