Everett McCAIN

v.

The TOWN OF NORTH PROVIDENCE, by and through its Mayor Charles LOMBARDI.

No. 2010–161–Appeal.

Supreme Court of Rhode Island.

April 5, 2012.

Edward C. Roy, Jr., Esq., North Kingstown, for Plaintiff.

Vincent F. Ragosta, Jr., Esq., Providence, for Defendant.

Present: SUTTELL, C.J, GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The Town of North Providence (town) appeals from a Superior Court judgment granting declaratory relief in favor of the plaintiff, Everett McCain (McCain or plaintiff), and denying the town's counterclaim for declaratory relief and monetary damages. On appeal, the town challenges the trial justice's interpretation of what is commonly referred to as Rhode Island's "injured on duty statute," G.L.1956 chapter 19 of title 45, as it pertains to McCain's qualification as a "firefighter" eligible to receive benefits under the statute. This case came before the Supreme Court on October 27, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the written and oral submissions of the parties, we are satisfied that cause has not been shown and that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

The underlying facts in this matter are not in dispute.[1] As indicated by a memorandum dated July 20, 2001, from the then-serving chief of staff of the town's mayoral office to the then-serving chief of the town's fire department (fire chief), the town hired McCain as a "Firefighter 3 Class, with the Communications Department of the North Providence Fire Department," effective July 23, 2001. McCain was to "receive any and all benefits associated with [that] position." Immediately thereafter, the fire chief issued General Order No.2001–16, formalizing McCain's appointment to the "North Providence Fire Department[2] as a Lineman in the Communications Division."[3] McCain was issued an identification card that certified him as a "TECHNICIAN" and "member of the North Providence Fire Department."[4]

According to the fire department's own employment descriptions and standards of procedure, a lineman's duties and responsibilities included, but were not limited to,

1. The parties filed an agreed statement of facts in the Superior Court upon which the trial justice relied in coming to his decision.

2. We hereinafter refer to the North Providence Fire Department as the fire department.

3. A "2008 Table of Organization" reflecting the configuration of the fire department—submitted as an exhibit to the parties' agreed statement of facts—separates the position of lineman from that of firefighter; the former falling under the heading of "Operations" and the latter lying subordinate to the heading "Superintendent Communications." We note that this organizational chart postdates McCain's injury, which occurred in 2006. In addition, an undated seniority list of fire department employees submitted in connection with the parties' agreed statement of facts designates McCain's "Rank" as "Civilian/Lineman" as opposed to "Firefighter." His seniority is ranked, however, amongst those employees designated as a "Firefighter."

4. While the identification card was not submitted in connection with the parties' agreed statement of facts, it is part of the lower court record as an exhibit to McCain's memorandum of law in reply to the town's memorandum of reply, and it was considered by the trial justice in his decision.

insuring proper operation of the bucket truck, maintaining the Municipal Fire Alarm system cabling, and installing and maintaining cabling to town buildings to support radio, telephone and networking equipment. As a lineman, McCain was also required to support the superintendent of telecommunications with the operation and maintenance of communications equipment, aid the Fire Prevention Division with inspections, and assist in any department issues as directed by the fire chief. McCain was not obligated to attend the fire-department-sponsored training academy, which the fire department used to provide fire-fighting training for new recruits serving in the "operations" division. Nor was McCain required to obtain an Emergency Medical Technician (EMT) certification. Even though he was issued "foul-weather gear," McCain was not issued "protective gear." Indeed, McCain "never fought a fire or made any rescue runs in the [t]own during his tenure as a lineman." He did, however, respond to incident scenes after a fire or other emergency was "under control" and when "the incident resulted in damage to exterior communications cabling."

During the term of his employment with the fire department, McCain was a member of Local 2334, International Association of Firefighters, AFL–CIO (the union), which the town recognized as "the exclusive bargaining agent for all employees of the [fire department], excepting the Chief of the Department and all Fire Alarm Dispatchers * * *." At the time of his injury, discussed *infra*, McCain was subject to the collective bargaining agreement (CBA) in effect between the town and the union.[5] Pursuant to that CBA, upon an employee's hire, he or she "h[e]ld the rank

of Fire Fighter 3 Class" and any vacancies in the "privates' ranks" of the fire department were to be filled "by persons who shall begin at the rank of Fire Fighter 3rd Class." Employees in the Communications Division, which includes linemen, are designated in the CBA as holding an "administrative position" and are ineligible to "work callback or overtime as a Firefighter." The CBA also provided that "[u]niformed employees in the Communications Division can not be utilized as working Fire Fighters when on duty" and, accordingly, are not counted as part of the minimum firefighter manpower requirements.

On June 23, 2006, McCain reportedly struck his head on the underside of the bucket apparatus on a bucket truck, after losing his grip getting into the truck to put a ladder away. Because McCain's injury occurred during the performance of his duties, McCain fell within the provisions of Article XI of the CBA, which stated in pertinent part as follows:

"*Section 1. Injuries and Illness*

Employees who are injured or who contract illness in the line of duty shall receive such benefits as are provided by the General Laws of the State of Rhode Island * * *.

" * * *

"*Section 3. Injuries and Illness*

"Any employee who shall become wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of their duty, shall, during the incapacity receive full salary or wages and medical expenses from the Town.

" * * *

"Should the State Pension Board determine the employee in question to be

---

**5.** That CBA was executed on May 18, 2005, and was effective from July 1, 2005 to June 30, 2008.

ineligible for Disability Retirement Benefits, then the Town shall continue to pay said employees [*sic*] such pay and allowances as provided for in 45–19–1 of the General Laws of Rhode Island, 1956 as amended, until such time as a determination can be made concerning the permanent future status of the individual concerned."

Accordingly, the town rendered injured-on-duty (IOD) payments to McCain pursuant to § 45–19–1, effective from the date of his injury—June 23, 2006. At some point in 2008, the State Retirement Board denied McCain's application for an accidental disability pension. Thus, the town continued McCain's IOD benefits until July 24, 2009, at which time the town ascertained that, in its view, McCain had been receiving such payments mistakenly. The town's new perspective was grounded in the fact that McCain was not a "sworn firefighter" and, for that reason, was ineligible to collect IOD payments under § 45–19–1. The town removed McCain from its payroll and advised its insurance company to reopen and process his claim as a workers' compensation-related injury.

Following the town's unilateral decision to cease making his salary payments, McCain filed a petition for a writ of mandamus with the Superior Court on August 25, 2009, requesting that the court order the town to resume his IOD benefits based on his asserted entitlement to such under § 45–19–1 and the CBA. In his petition, McCain also asked the court to "issue a declaratory judgment that [he] [wa]s a 'firefighter' within the meaning of * * * § 45–19–1(c)." On September 23, 2009, the town filed an objection to McCain's petition, as well as an answer, challenging McCain's eligibility to collect benefits un-

der the IOD statute. In addition, the town counterclaimed against McCain, seeking (1) a declaration that McCain was not a "firefighter" for purposes of collecting benefits under § 45–19–1, thereby rendering him ineligible to receive such benefits, and (2) to recoup the IOD payments previously made to McCain pursuant to an unjust-enrichment theory. On September 24, 2009, the parties jointly filed an agreed statement of facts, accompanied by exhibits. Based upon this agreed statement, as well as the parties' submitted memoranda, the trial justice issued a written decision on March 11, 2010, finding McCain to fall within the "broad" definition of "firefighter" as set forth in the IOD statute. The trial justice declined, however, to issue a writ of mandamus as requested by McCain.[6]

In coming to his decision, the trial justice found occasion to examine the pertinent portions of § 45–19–1 (in effect at the time of McCain's injury) addressing the definition of "firefighter" and the ability of such a "firefighter" to recover under the statute. Those particular provisions provided that

"(a) [w]henever any * * * fire fighter * * * of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town, or fire district, or state of Rhode Island by which the * * * fire fighter * * * is employed, shall, during the period of the incapacity, pay the * * * fire fighter * * * the salary or wage and benefits to which the * * * fire fighter * * * would be entitled had he or she not been incapacitated * * *. In addition, the cities, towns,

---

**6.** The trial justice's declination to issue a writ of mandamus is not challenged by McCain on appeal.

fire districts, or the state of Rhode Island shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement.

" * * *

"(c) As used in this section, 'fire fighter' means and includes any chief or other member of the fire department or rescue personnel of any city, town, or fire district, and any person employed as a member of the fire department of the town of North Smithfield, or fire department or district in any city or town."

The town maintained that McCain was not a "member of the fire department" under this portion of the IOD statute in view of his employment as a civilian lineman in an auxiliary capacity, because, in the town's view, the Legislature intended that only "first-responders" be included under the statute's protections. The town directed the trial justice to subsequent amendments to the statute, discussed *infra*, that the town argued clarified the Legislature's intended limitation of the statute's coverage to "first-responders" only. On the contrary, McCain, although admittedly not a "sworn firefighter," averred that he indeed was covered by the statute as a "member" of the fire department hired under the classification of "3rd Class Firefighter."

In his written decision, the trial justice determined the language at issue to be "clear and requir[ing] no interpretation." Thus, the trial justice declined to consider the legislative amendments effective after the date of McCain's injury. The trial justice recognized that, although McCain was not a "firefighter" in the "traditional sense," he "clearly [fell] under the definition provided by § 45–19–l(c) because he [was] a 'person employed as a member of the fire department.'" Judgment was entered on March 25, 2010, granting declaratory relief in favor of McCain and denying the town declaratory relief as sought in its counterclaim. The town timely filed a notice of appeal on April 6, 2010.

## II

### Standard of Review

The sole issue before this Court is one of statutory interpretation. It is well settled that we apply a *de novo* review to such questions, with the "ultimate goal" of giving effect to that purpose which our Legislature intended in crafting the statutory language. *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001); *see also DaPonte v. Ocean State Job Lot, Inc.*, 21 A.3d 248, 250 (R.I.2011). We have acknowledged that in ascertaining and effectuating that legislative intent, "the plain statutory language" itself serves as "the best indicator." *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 616 (R.I.2011) (quoting *State v. Santos*, 870 A.2d 1029, 1032 (R.I.2005)). When that statutory language is "clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Gordon*, 30 A.3d 636, 638 (R.I.2011) (quoting *Tanner v. Town Council of East Greenwich*, 880 A.2d 784, 796 (R.I.2005)). Moreover, "when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 122 (R.I.2009) (quoting *State v. Oliveira*, 882 A.2d 1097, 1110 (R.I. 2005)). In fulfilling our interpretive calling, this Court remains mindful of the longstanding principle that "statutes should not be construed to achieve meaningless or absurd results." *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I.2011) (quoting *Berthiaume v. School Committee*

*of Woonsocket*, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979)).

## III

### Discussion

■ By enacting the IOD statute, the Legislature intended to "provide greater work-related-injury benefits to certain public employees whose jobs require them to serve the state or its municipalities, often in dangerous situations." *Hargreaves v. Jack*, 750 A.2d 430, 433 (R.I. 2000) (quoting *Labbadia v. State*, 513 A.2d 18, 21 (R.I.1986)); *see also Mignone v. Fieldcrest Mills*, 556 A.2d 35, 39 (R.I.1989) (Section 45–19–1 is designed to "compensate[ ] firefighters at the public's expense for injuries sustained in the course of their duties."). "We consistently have declared that the IOD statute 'is a substitute for workers' compensation and affords greater protection to injured police officers and firefighters' than other benefit schemes, including the state Workers' Compensation Act." *Hagenberg v. Avedisian*, 879 A.2d 436, 441 (R.I.2005) (quoting *Webster*, 774 A.2d at 80). In fact, police officers and firefighters are explicitly excluded from collecting benefits under the Workers' Compensation Act. *See* G.L.1956 § 28–29–2(4) ("The term 'employee' also does not include * * * the members of the regularly organized fire and police departments of any town or city * * *.").

■ In the current case, we are asked to determine whether McCain, a civilian lineman with the fire department, was a "firefighter" at the time of his injury for purposes of collecting benefits under the IOD statute. As defined in § 45–19–1(c), " 'fire fighter' means and includes any chief or other member of the fire department or rescue personnel of any city, town, or fire district, and any person employed as a member of the fire department * * * or district in any city or town." Conse-

quently, if McCain was "employed as a member of the fire department," he was indeed a "firefighter" for purposes of this statute.

Though not previously presented with this precise predicament, this Court has in fact examined the language of § 45–19–1 in the determination of coverage disputes. *See Angell v. Union Fire District of South Kingstown*, 935 A.2d 943, 947 (R.I.2007) ("the IOD statute as written does not encompass volunteer firefighters in its general benefits provision in § 45–19–1"); *Terrano v. State, Department of Corrections*, 573 A.2d 1181, 1184 (R.I.1990) ("we conclude, from the language of the [IOD] statute, that the Legislature did not intend [Rhode Island state] marshals to be included within the § 45–19–1 meaning of 'police officer' "); *see also DeLaire v. Kaskel*, 842 A.2d 1052, 1056 (R.I.2004) (acknowledging, in a public-safety-officer rule case, that animal-control officers do not enjoy the protections of § 45–19–1, but instead receive compensation for work-related injuries under the Workers' Compensation Act). In so doing, we have recognized that "[§] 45–19–1 is remedial legislation that should be liberally construed." *Terrano*, 573 A.2d at 1184 (quoting *Aiudi v. Pepin*, 417 A.2d 320, 322 (R.I.1980)). However, we have likewise observed that this remedial statute "may be liberally construed for the benefit of only those persons specifically listed within § 45–19–1." *Terrano*, 573 A.2d at 1184.

Here, a majority of the Court agrees with the trial justice's determination that the statutory language at issue is clear and unambiguous, and thus is spared of a court's construction as to legislative intent. Upon application of the plain and ordinary meaning of "person employed as a member of the fire department" to the facts at hand, we hold that McCain, at the time of his injury, was indeed a "firefighter" in-

jured in the course of his duties eligible to receive benefits in accordance with the IOD statute. *See Planned Environments Management Corp.*, 966 A.2d at 121 ("we adhere to the principle that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings"). McCain was hired by the town as a "Firefighter 3 Class" with the fire department and appointed as a lineman in the Communications Division of the fire department. His identification card certified him as a "member" of the fire department. Although McCain's training, duties and responsibilities did not fall within the purview of those traditionally associated with a "first-responder," he was employed as a "member" of the fire department for purposes of the IOD statute.[7] Any distinctions between "first-responder" firefighters and linemen in the CBA are of no import to our application of the statute as written.

 The town fervently advocates its position that despite the literal meaning associated with the language "person employed as a member of the fire depart-

ment," the Legislature intended the protections of the IOD statute to be limited to members of the fire department who are also "first-responders." In so arguing, the town underscores its concern about the potential for those employed with the fire department in solely administrative capacities to collect benefits under the IOD statute upon sickness or injury in the course of their administrative duties.[8] Nevertheless, this Court's review of a legislative pronouncement is not without restraint—upon deeming a statutory provision as unambiguous, we "conclusively presume[ ]" that "[t]he meaning expressed is * * * to be the meaning intended." *Terrano*, 573 A.2d at 1183 (quoting *Murphy v. Murphy*, 471 A.2d 619, 622 (R.I.1984)). Moreover, "[t]he plain statutory language is the best indicator of legislative intent." *DeMarco*, 26 A.3d at 616 (quoting *Santos*, 870 A.2d at 1032).

Additionally, the town directs this Court to two subsequent amendments to § 45–19–1 that, in the town's view, clarify and confirm the already-existing exclusion of "non-first responders" from the statute's domain.[9] This Court has recognized that

7. As evidenced by McCain's injury, the position of lineman is not without risk. Nor is the position without grave responsibility. As we have noted previously, "an ounce of preventative firefighting * * * may often be worth a pound of after-the-fact heroics by a whole squad of firefighters dispatched to douse a raging conflagration." *Labrie v. Pace Membership Warehouse, Inc.*, 678 A.2d 867, 871 (R.I.1996).

8. The applicability of G.L.1956 § 45–19–1 to administrative personnel within a fire department is not before this Court; however, we discern this issue as a perhaps unintended consequence of the broad definition of "firefighter" enacted by the Legislature, which remains vested with the power to narrow the definition should it see fit.

9. The amendments to which the town referred were two of several amendments to

§ 45–19–1 that became effective on July 6, 2007, by virtue of P.L.2007, ch. 284, § 1. Public Laws 2007, ch. 284, § 1 added language to § 45–19–1(a) that provided for an additional situation by which a protected individual could qualify for IOD benefits—when such an individual is injured "due to their rendering of emergency assistance within the physical boundaries of the state * * * at any occurrence involving the protection or rescue of human life which necessitates that they respond in a professional capacity when they would normally be considered by their employer to be officially off-duty * * *." An additional amendment added subsection (g), which reads as follows:

"In order to receive the benefits provided for under this section, a police officer or firefighter must prove to their employer that he or she had reasonable grounds to believe that there was an emergency which

"[w]hen a subsequent amendment serves to clarify, rather than to change, the amended statute, the amendment is entitled to great weight in construing the preamendment version of the law." *Hometown Properties, Inc. v. Fleming*, 680 A.2d 56, 62 (R.I.1996). However, embarking on such a comparative analysis requires that this Court first determine the provision at issue to be ambiguous in nature. *Id.* ("the amendment of an ambiguous statutory declaration may be viewed as an attempt to resolve the ambiguity") (citing 1A *Sutherland Statutory Construction* § 22.30 at 267–68 (5th ed. 1992)). Such is not the case here.

Based on the clear and unambiguous language set forth in § 45–19–l(c), we hold that the plaintiff met the definition of "firefighter" at the time of his injury for purposes of collecting injured-on-duty benefits under that statute.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to Superior Court.

Justice GOLDBERG, with whom Chief Justice SUTTELL joins, dissenting.

I respectfully dissent from the decision of the majority. The plaintiff in this case is an employee of the Town of North Providence whose job is to maintain the communications equipment for the fire department. Although he may be classified in the town's employment scheme as a member of the fire department, the plaintiff is not a firefighter or first responder and, in my opinion, does not fall within the purview of the IOD statute. General Laws 1956 § 45–19–1 originally was enacted in 1944 by P.L.1944, ch. 1479. It has been amended at least nineteen times since then. Many of these amendments expanded the class of people included within the statute's purview. None of the amendments embraced civilian personnel who perform maintenance functions.

At the time when § 45–19–1 was adopted, "police officers and firefighters had no effective right of action against their state or municipal employers because of sovereign immunity." *Kaya v. Partington*, 681 A.2d 256, 260 (R.I.1996). The original act "required cities and towns to pay only police officers who were incapacitated during the performance of their duties their full salary for the duration of the incapacity." *Terrano v. State, Department of Corrections*, 573 A.2d 1181, 1183 (R.I.1990). Firefighters, described as "firemen," were added in 1952 by P.L. 1952, ch. 2915, § 1. Crash rescue crewmen were added in 1972 by P.L.1972, ch. 212, § 1, and fire marshals and deputy fire marshals were included in 1988 by P.L. 1988, ch. 329, § 1. Over the years, other classes of first responders and public safety personnel were included as beneficiaries of this compensation scheme.[10]

Significantly, and conclusively, in my opinion, when the General Assembly included firemen in 1952, the term "fireman" was defined to "mean and include any chief

---

required an immediate need for their assistance for the protection or rescue of human life." P.L.2007, ch. 284, § 1.

**10.** *See* P.L.1987, ch. 528, § 1 ("any person employed as a member of the fire department of the town of North Smithfield"); P.L.2001, ch. 77, § 6 ("any executive high sheriff, sheriff or deputy sheriff"); P.L.2002, ch. 65, § 2 ("member of the fugitive task force, or capitol police officer"); P.L.2007, ch. 329, § 1 ("permanent environmental police officer or criminal investigator of the department of environmental management"); P.L.2007, ch. 497, § 3 ("airport police officer").

or other *member of the fire department of any city or town*, regularly employed at a fixed salary or wage." P.L.1952, ch. 2915, § 1 (emphasis added). Despite all of the additions and variations to § 45–19–1 since its enactment, this definition of "fireman" (now "firefighter") has remained largely unchanged. Every version of § 45–19–1 defined "fireman" as one who is regularly employed as a member of the fire department of a city or town. Although the majority holds that plaintiff—who is classified as a member of the fire department in the town's personnel roster—falls within this definition based on what the majority perceives as the plain meaning of the statute, I disagree. I cannot conclude that the General Assembly intended to provide injured-on-duty benefits for maintenance personnel or that the definition of "firefighter" as contained in § 45–19–1 is so broad as to encompass employees of the fire department who are not firefighters.

It is my view that such a mechanical application of the IOD statute, so as to include within its provisions those who repair communications equipment, leads to an absurd result and is a departure from our settled case law with respect to this Court's approach to statutory interpretation. When an interpretation of a statutory definition leads to an outcome that is contrary to the policy that underlies the act and achieves an absurd result, this Court simply declines to engage in mere semantics. Our function is to "look beyond mere semantics and give effect to the purpose of the act." *Commercial Union Insurance Co. v. Pelchat*, 727 A.2d 676, 681 (R.I.1999) (quoting *Matter of Falstaff Brewing Corp.*, 637 A.2d 1047, 1050 (R.I. 1994)). In my opinion, the meaning of the phrase "member of the fire department or rescue personnel of any city, town, or fire district" means today what it meant in 1952—a firefighter; a person whose job it is to fight fires; to run into burning buildings; a person who places his (or her) life in jeopardy to protect us and keep us safe.

This Court consistently has declared that the IOD statute was "intended to provide greater work-related-injury benefits to *certain public employees* whose jobs require them to serve the state or its municipalities, often in dangerous situations." *Labbadia v. State of Rhode Island*, 513 A.2d 18, 21 (R.I.1986) (emphasis added). And it is only those "certain public employees," as specifically enumerated by the Legislature, who are entitled to the generous compensation provided by the IOD statute. *Terrano*, 573 A.2d at 1184. We never have expanded the definition of those beneficiaries to include a class of employees who were not specifically enumerated in the IOD statute. *See Angell v. Union Fire District of South Kingstown*, 935 A.2d 943, 947 (R.I.2007) (declining to adopt a broad interpretation of the IOD statute to include volunteer firefighters); *Terrano,* 573 A.2d at 1184 (declaring that state marshals employed by the Department of Corrections were not included in the IOD statute in effect at the time of the plaintiff's injury and concluding, therefore, that the Legislature did not intend to expand the scope of § 45–19–1 to those employees charged with transporting inmates, or it would have done so by explicit amendment).

When confronted with a statute's definitional terms, our task is clear—we do not engage in a mechanistic exercise. "It is true that definitions should usually be given their ordinary meaning and should usually be strictly construed." *Labbadia*, 513 A.2d at 22. However, it equally is clear that "if a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, this [C]ourt will look *beyond mere semantics and give effect to the purpose of the act.*" *State v. Delaurier*, 488 A.2d 688, 694 (R.I.1985)

(emphasis added); *see also Pelchat,* 727 A.2d at 681; *Kaya,* 681 A.2d at 260; *Matter of Falstaff Brewing Corp.,* 637 A.2d at 1050; *Qualitex, Inc. v. Coventry Realty Corp.,* 557 A.2d 850, 853 (R.I.1989); *State v. Timms,* 505 A.2d 1132, 1136 (R.I.1986). With respect to interpreting the definitional terms in a statute, we do not sacrifice common sense in favor of strict statutory construction when it would produce a result that clearly was not intended by the Legislature. *See Delaurier,* 488 A.2d at 695.

This Court is the final arbiter on issues of statutory interpretation, and our responsibility is to faithfully ascertain and give effect to the intent of the Legislature. "In so doing, we consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Sorenson v. Colibri Corp.,* 650 A.2d 125, 128 (R.I.1994) (citing *Bailey v. American Stores, Inc./Star Market,* 610 A.2d 117, 119 (R.I.1992)); *see also Stone v. Goulet,* 522 A.2d 216, 218 (R.I.1987). We refuse to accord a literal application to a statutory definition when to do so "would produce an unintended result and is contrary to the policy and purpose underlying the act." *Sorenson,* 650 A.2d at 129. As such, this Court must "look beyond mere semantics and give effect to the purpose of the act." *Id.* (quoting *Delaurier,* 488 A.2d at 694).

Because the underlying purpose of the IOD statutory scheme is to provide greater compensation and remedial benefits—at taxpayers' expense—to those who risk their lives in the performance of their duties to protect the citizenry, it is my belief that we should strictly adhere to the salutary purpose of the IOD statute and guard against unintended incursions into this benefit system. Statutory interpretation is not a perfunctory exercise. A me-

chanical application of the IOD statute that results in persons other than public safety personnel being included within its provisions serves no purpose and defeats the desired effect of the act. Consequently, I dissent.

